279 P.2d 463

Mary RAMIREZ, Appellant,

v.

OGDEN CITY, Respondent.

No. 8233.

Supreme Court of Utah.

Jan. 26, 1955.

Wallace, Adams & Peterson, Ogden, for appellant.

Paul Thatcher, Jack A. Richards, D. A. Alsup, Ogden, for respondent.

CROCKETT, Justice.

Mary Ramirez seeks recovery against Ogden City for personal injuries sustained when her rayon dress came in contact with an unprotected gas heater and caught fire in the ladies' powder room of the Ogden Wall Street Community Center. The case was submitted on an agreed statement of facts and the court below entered judgment for city, dismissing the action. Plaintiff appeals.

The trial below held that the city was immune from tort liability for the reason that maintenance of the Center by the city was a governmental and not a proprietary function. We think this ruling was proper.

The defendant city, a municipal corporation, acquired the premises in question from Weber County in 1939 by deeds which provided that the property was to be used "exclusively as a community recreational center." From 1944 to 1946, the buildings on the premises were leased to the United Service Organization (U.S.O.). The "snack bar" concession was leased for the sum of $101 per month for a period of two months in 1946 and later for $50 per month. The latter lease was terminated prior to 1948.

Sometime in August of 1946, after the U.S.O. had vacated the premises, Mr. Thomas East, then City Commissioner of Parks and Public Property, called a mass meeting of citizens for the purpose of selecting a group to manage the Center. At this meeting, held at the Center, a board of directors was created and members thereof elected by the citizens. Three advisors to this board were nominated by Commissioner East, and both the directors of the board and their advisors served on a voluntary basis without compensation. In September of 1946, the board of directors assumed general management of the Center. Mrs.

Beulah Jones, an employee of the city, has had the responsibility of immediate supervision over the recreational program and activity. Although compensated by the city, she has been under the direction and control of the board of directors.

Both under the lease with the U.S.O. and the arrangement with the board of directors, the city annually contributed approximately $6,000 to $8,000 for the maintenance and operation of the Center. No money has been paid into the City Treasury by reason of the operation since 1947, although from time to time Mrs. Jones, "the director" of the Center, receives small items of income from the operation of the snack bar, hall rental, and voluntary donations. This money was used for the purchase of such things as games, recreational and office supplies, Christmas tree decorations and items for children's parties. It is agreed that the enterprise is operated exclusively as a public recreational center; that everyone is free to use it and no one is excluded.

On the evening of March 8, 1952, plaintiff had come to the premises to attend a dance given by the Havana Club, an organization of Spanish speaking people which had made arrangements with Mrs. Jones for the use of the Hall. They paid her $15 which she put down on her account as "hall rental" and the Club was charging 75 cents per person for admittance. Before purchasing her ticket, the plaintiff went into the "powder room" in the other wing of the building to make last minute preparations for the dance when the unfortunate incident occurred.

 It has long been recognized in this jurisdiction that a municipal corporation may act both in a public and a private capacity and that when performing in a public or governmental function it is not subject to tort liability.[1] From time to time certain judicial expressions have been uttered questioning the soundness of that rule as a matter of policy.[2] Whatever its desirability or undesirability may be, it has long been firmly established in our law by rulings of the majority of this court.[3] In deference to the principle of stare decisis we do not now feel at liberty to consider its merits or demerits. Any change would be properly within the province of the Legisla-

1. Sehy v. Salt Lake City, 41 Utah 535, 126 P. 691, 42 L.R.A.,N.S., 915; Gillmor v. Salt Lake City, 32 Utah 180, 89 P. 714, 12 L.R.A.,N.S., 537; Rollow v. Ogden City, 66 Utah 475, 243 P. 791; Niblock v. Salt Lake City, 100 Utah 573, 111 P. 2d 800; Davis v. Provo City Corp., 1 Utah 2d 244, 265 P.2d 415.

2. See Justice Wolfe's concurrence in Niblock v. Salt Lake City, supra; Driggs v. Utah Teacher's Retirement Board, 105 Utah 417, 426, 142 P.2d 657.

3. "While law writers, editors and judges have criticized and disapproved the foregoing doctrine of governmental immunity as illogical and unjust, the weight of precedent of decided cases supports the general rule and we prefer not to disregard a principle so well established without statutory authority." Bingham v. Board of Education of Ogden City, 118 Utah 582, 223 P.2d 432, 435.

ture.[4] We are not here confronted with any extremely aggravated grievance such as where a municipality knowingly permits a condition of extreme danger to persist.[5] The charge is merely one of ordinary negligence.

Some contention is made that the failure of the city to designate and set apart the Center as an "indoor recreational facility" as authorized by statute,[6] prevents the city from claiming that it was operated as a governmental activity. But the fact that the city took title to the property, employed a director to supervise the recreational activities, and contributed in excess of $6,000 per year for its operation, seems sufficient to show that the city was operating it, whether or not there was a formal dedication for public use.

The real perplexity which confronts us is that of determining whether Ogden City's function in relation to the Wall Street Community Center was governmental or proprietary. There are many adjudicated cases making fine shades of distinction between the public or governmental, as contrasted with the proprietary or commercial activities of municipalities upon which the liability or nonliability of a city for injuries by negligence depends.[7]

The most general test of governmental function relates to the nature of the activity. It must be something done or furnished for the general public good, that is, of a "public or governmental character",[8] such as the maintenance and operation of public schools, hospitals, public charities, public parks or recreational facilities.[9] In addition to the above mentioned general test these supplemental ones are also applied: (a) whether there is special pecuniary benefit or profit to the city [10] and (b) whether the activity is of such a nature as to be in real competition with free enterprise.[11]

Thus in Adler v. Salt Lake City,[12] this Court held that the maintenance of a public park and the presentation of a pageant was

---

4. Davis v. Provo City Corp., supra; Bingham v. Board of Education of Ogden City, Utah, supra; Niblock v. Salt Lake City, supra (quoting Husband v. Salt Lake City, 92 Utah 449, 69 P.2d 491).

5. See concurrence of Justice Crockett in Davis v. Provo City Corp., supra.

6. Sec. 11-2-1, U.C.A. 1953.

7. See cases collected in footnotes 1, 3, 4, 5 and 6 of Davis v. Provo City Corp., supra. See also, Prosser, Torts, p. 1066–1075 (1941):

8. Burton v. Salt Lake City, 69 Utah 186, 253 P. 443, 445, 51 A.L.R. 364.

9. See Prosser, Torts p. 1070–1071 (1941) for examples of "governmental" activities as well as those partaking of a proprietary character. Prime examples of municipal activities of a proprietary nature are listed as the operation of a ferry, wharves or docks or a public market.

10. Bolster v. City of Lawrence, 225 Mass. 387, 114 N.E. 722, L.R.A.1917B, 1285; Adler v. Salt Lake City, 64 Utah 568, 231 P. 1102.

11. Griffin v. Salt Lake City, 111 Utah 94, 176 P.2d 156, 160.

12. 64 Utah 568, 231 P. 1102, 1103.

a governmental function, declaring that the guilding principle was "whether the act is for the common good of all without the element of special corporate benefit or pecuniary profit. If it is, there is no liability; if it is not, there may be liability." A similar result was reached in the recent case of Davis v. Provo City,[13] wherein this court decided that the maintenance of a coasting hill for children was a governmental undertaking. No fee was there involved. There is, of course, no logical basis for distinction between an indoor and an outdoor recreational activity maintained by the city.

In Griffin v. Salt Lake City,[14] which was concerned with the operation of a municipal swimming pool, we noted that where private enterprise can perform the function as successfully as the municipality, so that the city is in actual competition with private enterprise, the function is proprietary and the city liable. One reason assigned for such ruling was that it would "encourage efficiency and proper management of municipal enterprises."

■ The History of the acquisition of this recreational facility, Ogden City's role in assisting the residents of the area to take it over and maintain it, and the manner in which it was operated, do not characterize it as in the nature of private enterprise, nor in competition therewith. Rather, the facts and circumstances presented here align themselves into a pattern consonant with the above mentioned tests applied in determining governmental function: the Center was intended to be, and was used as a public service for the common good of all, and maintained solely for the entertainment, pleasure and benefit of the general public. The rather large expenditures made by the city for its maintenance, coupled with lack of income therefrom, except the incidental fees referred to which may be regarded as merely nominal, show that there was no motive of special pecuniary benefit to be derived by the city.

Plaintiff maintains, however, that even if the general purpose and function of the city in operating the Center be governmental, still as to the Havana Club and those who came to attend the dance, the city was acting in a proprietary capacity as landlord. With this we cannot agree. The arrangement was nonetheless in accordance with the general purpose of the recreational facility. Where the activity is otherwise consistent with the governmental function, the fact that a nominal charge is made does not change its character; [15] neither the fact that a fee is exacted, nor that there may be some incidental pecuniary benefit to the city, are by themselves controlling.[16]

---

13. See footnote 1, supra.

14. 111 Utah 94, 176 P.2d 156, 160.

15. See Chafee v. Inhabitants of Town of Oxford, 308. Mass. 520, 33 N.E.2d 298, 134 A.L.R. 756.

16. Burton v. Salt Lake City, 69 Utah 186, 253 P. 443, 445, 51 A.L.R. 364; 63 C.J.S., Municipal Corporations, § 758, p. 52.

We believe that under the facts here shown, the operation of the Community Wall Street Center by Ogden City could properly be viewed by the trial court as a governmental and not as a proprietary activity. Accordingly, we affirm the order dismissing the action. Costs to respondent.

McDONOUGH, C. J., and HENRIOD, WADE, and WORTHEN, JJ., concur.