343 P.2d 728

Paul Ernest JOPES, Plaintiff and Appellant,

v.

SALT LAKE COUNTY, Salt Lake County Recreation Board, Junior Chamber of Commerce of Salt Lake City, Meadow Brook Golf Club and Joseph Michael Riley, Defendants and Respondents.

No. 8702.

Supreme Court of Utah.

Sept. 10, 1959.

298

Van Cott, Bagley, Cornwall & McCarthy, Grant Macfarlane, Jr., Salt Lake City, for appellant.

Ray R. Christensen, Kipp & Charlier, Raymond M. Berry, Hanson & Baldwin, Salt Lake City, for respondents.

CALLISTER, Justice.

An action to recover damages for personal injuries. At the close of the evidence, the trial court directed verdicts in favor of the defendants, Salt Lake County, Junior Chamber of Commerce of Salt Lake City, Meadow Brook Golf Club and Joseph Michael Riley, and plaintiff appeals. Plaintiff does not appeal from the court's order dismissing the action as to the Salt Lake County Recreation Board.

The plaintiff, a professional golfer, was an invited participant in the 1955 Utah Open Golf Tournament held at the Meadow Brook Golf Course in Salt Lake County. He sustained injuries when he tripped over a cement abutment located in a hallway of the club house.

The golf course is owned by Salt Lake County and operated by its Recreation Board. It is open to the general public and any one desiring to play golf there may do so upon payment of a fee.

Located upon the course is a club house which contains a restaurant, golf shop, locker rooms and shower rooms. The restaurant is under lease to a private individual, and the County receives five per cent of the gross income as rent.

The evidence discloses that the course has yet to operate at a profit but the County has received approximately $2,000 per year from the restaurant operation.

The defendant, Joseph Michael Riley, has a contract with the County Recreation Board as "Golf Professional, Instructor and Manager" of the course. Under the contract Riley is charged with "promotion of instruction and to supervise, operate, improve and maintain the golf course." He receives compensation for these services and in addition, is granted the privilege of maintaining a golf shop in the club house and the exclusive right to give instruction in golf.

When the Utah Golf Association consulted with the County and Riley they consented to hold the tournament at Meadow Brook, considering it to be an obligation. Subsequently, the defendants, Junior Chamber of Commerce of Salt Lake City and the Meadow Brook Golf Club, offered to co-sponsor the tournament. The last named defendant is a voluntary association of golfers using the Meadow Brook Course.

The co-sponsors were responsible for the promotion of the tournament, guaranteeing payment of the expenses, including prizes. They were to share equally in the profits as well as the expenses.

A general committee was formed, consisting of Riley and a representative from each of the co-sponsoring organizations.

In preparation for the tournament, Riley had county employees construct a large scoreboard and place it on the outside of the east wall of the hallway leading from the restaurant to the golf shop and locker rooms. This east wall is constructed of glass block which ordinarily permitted the passage of natural light into the hallway. The scoreboard, so placed, prevented the passage of natural light, and, at the time of the accident there was no artificial illumination in the hallway.

The hallway in question is approximately 18 feet in length, four feet in width and runs in a north and south direction. The glass block wall was laid on a concrete foundation approximately 18 inches high. At the north end of the hallway a concrete abutment (part of the foundation) about 18 inches in height protrudes into a traveled portion of the hallway approximately one foot.

On the day of the accident at approximately 3 p. m., plaintiff had finished a round of golf and was in need of change to pay his caddy. He went to the restaurant, secured the change and a cup of beer, and proceeded down the hallway towards the golf shop. He tripped over the concrete abutment and was injured.

In granting the motions for directed verdicts, the trial court held in substance (1) that the County was immune from liability because the operation of the golf course is a governmental function; (2) that the Junior Chamber and the Golf Club did not have control over the club house and were not responsible for its condition or the placing of the scoreboard; and (3) that Riley was responsible for the placing of the scoreboard, but that plaintiff was guilty of contributory negligence.

We agree with the trial court that the operation of a golf course is a governmental function. In so doing, it is unnecessary in this case to decide whether or not a county could be held liable in the exercise of a proprietary function.

In determining that the operation of a golf course is a governmental function we refer to the recent case of Ramirez v. Ogden City,[1] wherein this court stated:

"The most general test of governmental function relates to the nature of the activity. It must be something done or furnished for the general public good, that is, of a 'public or governmental character,' such as the maintenance and operation of public schools, hospitals, public charities, public parks or *recreational facilities*. In addition to the above mentioned general test these supplemental ones are also applied:

1. 3 Utah 2d 102, 279 P.2d 463, 465.

(a) whether there is a special pecuniary benefit or profit to the city and (b) whether the activity is of such a nature as to be in real competition with free enterprise."

■ The Meadow Brook Golf Course is a recreational facility furnished by the County for the good of the general public. Golf is now a sport which may be enjoyed by the general public and is rising in popularity. As yet the County derives no pecuniary benefit from the operation of the course; as a matter of fact, it has, since its construction, always operated at a loss. Even if the County profitably operated a golf course, this alone would not make it a proprietary function unless it also was in competition with private enterprise or could be operated as successfully by private enterprise.[2]

The operation of golfing facilities does not seem to be adapted to successful private enterprise. Golf, originally a rich man's game, was only available to such people through expensive membership in private clubs. One searches in vain to find public golf courses in this area that are successfully operated by private enterprise. County and municipal government in this area have seen fit to make golfing facilities available to the general public, and in so doing does not compete with private enterprise in any way.

■ The fact that fees are charged for the use of the course and the lockers, and the further fact that the restaurant is leased to a private individual does not, in our opinion, change the activity into one of a proprietary nature.

■ We further agree with the trial judge that no liability exists with respect to the Junior Chamber of Commerce and the Meadow Brook Golf Club. From the evidence it is apparent that they exercised no control over the operation and maintenance of the club house nor over the actions of Riley.

■ With respect to the possible liability of Riley, we must disagree with the trial court. He was the manager of the golf course and, as such, responsible to maintain it and its facilities in a safe condition. He had the scoreboard made and directed its placement along the east wall of the hallway. He knew or should have known whether or not the scoreboard, so placed, created a hazard. In this jurisdiction a governmental employee may be held personally liable for his negligent acts done in the performance of his duties, even though his employer is immune.[3]

2. Griffin v. Salt Lake City, 111 Utah 94, 176 P.2d 156, 160.

3. Lowry v. Carbon County, 64 Utah 555, 232 P. 908.

■ We do not agree with the finding of the trial court, that the plaintiff was guilty of contributory negligence as a matter of law. Looking at the evidence in the light most favorable to the plaintiff,[4] we think that the issues of Riley's negligence and of the plaintiff's negligence should have been submitted to the jury.

There was competent evidence that the erection of the scoreboard had the effect of darkening the hallway. Plaintiff testified that he had used the hallway on previous occasions, but was unaware of the existence of the abutment until he tripped over it; that at the time of the accident he was watching where he was going. Another golfer testified that the hallway was dimly lighted and that, although he was watching where he was going, he tripped over the abutment.

Accordingly, the judgment of the lower court is affirmed to the extent that the motions for directed verdicts in favor of Salt Lake County, Junior Chamber of Commerce of Salt Lake City and the Meadow Brook Golf Club were granted, and in other respects the judgment of the lower court is reversed. No costs allowed.

CROCKETT, C. J., and WADE, HENRIOD, and McDONOUGH, JJ., concur.

4. Finlayson v. Brady, 121 Utah 204, 240 P.2d 491.