353 P.2d 914

Mabel H. WADE, Plaintiff and Appellant,

v.

SALT LAKE CITY, a corporation, Defendant and Respondent.

No. 9219.

Supreme Court of Utah.

July 7, 1960.

Mark S. Miner, Salt Lake City, for appellant.

Moreton, Christensen & Christensen, Salt Lake City, for respondent.

HENRIOD, Justice.

Appeal from the dismissal of a complaint alleging injuries when plaintiff slipped on a

foreign substance in the municipal airport waiting room. Affirmed. No costs.

■ Only question posed is whether operation of the Salt Lake Airport was in a governmental or proprietary capacity,— determining nonliability or liability.[1a]

The trial court's action precluded introduction of any evidence as to the nature and extent of any competitive business-like role of those running the airport,[2] or the lack of it. In view of statutory interdictions, however, of which we may take judicial notice,[3] it seems inescapable that we could conclude other than that this airport was a governmental instrumentality, not in competition with private entrepreneurs, but confined by legislation, to a restricted governmental purpose.

The state aeronautics commission, municipalities, counties and other state political subdivisions are authorized to secure and operate airport facilities,[4] singly or together,[5] "for public, governmental and municipal purposes,"[6] and property may be condemned for the purposes of the Act.[7] Local authorities may tax to effectuate such purposes.[8] The Act is titled: "Public Airports Act," the state has sweeping regulatory power over airports,[9] and the statute itself sets the pattern for them generally.[10] Many other sections of the basic legislation,[11] make it appear that a statutory regulatory system pre-empts to the state subdivisions an authority to police and supervise airports generally, in an atmosphere of government control that either precludes proprietary operation thereof, in the ordinary sense of that word, or prevents it, absent legislative sanction. Nothing is alleged reflecting any other use than that suggested, and we take it that any purpose other than governmental must be pleaded, and be free from legislative inhibition.

■ Title 41–11–11, U.C.A.1953 authorizes the state to levy taxes, part of which is earmarked and distributed to local authorities operating airports, which funds are expendable for such ports under the supervision of the state aeronautics commission.

1a. Jopes v. Salt Lake County, 1959, 9 Utah 2d 297, 343 P.2d 728; Ramirez v. Ogden City, 1955, 3 Utah 2d 102, 279 P.2d 463, 47 A.L.R.2d 539; Davis v. Provo City Corp. et al., 1953, 1 Utah 2d 244, 265 P.2d 415; Griffin v. Salt Lake City, 1947, 111 Utah 94, 176 P.2d 156; Niblock v. Salt Lake City, 1941, 100 Utah 573, 111 P.2d 800; Husband v. Salt Lake City, 1937, 92 Utah 449, 69 P.2d 491; Alder v. Salt Lake City, 1924, 64 Utah 568, 231 P. 1102.

2. Jopes v. Salt Lake County, supra; Ramirez v. Ogden City, supra; Griffin v. Salt Lake City, supra.
3. Title 78–25–1(3), Utah Code Annotated 1953.
4. Title 2–2–3, U.C.A.1953.
5. Title 2–2–2, U.C.A.1953.
6. Title 2–2–4, U.C.A.1953.
7. Title 2–2–5, U.C.A.1953.
8. Title 2–2–8, U.C.A.1953.
9. Title 2–1–12, U.C.A.1953.
10. Title 2–1–1(4), U.C.A.1953.
11. Title 2, U.C.A.1953.

This statute, we feel, reflects rather more forceably, even, than the legislation adverted to above, the governmental nature of the operation of public airports in this state, and the public policy calling for official rather than proprietary operation and policing.

Something was said by plaintiff on appeal about the city having liability insurance. Nothing in the record alludes thereto, and the nature, extent and conditions thereof are not before us and not reviewable.

■ We are aware of the diversity of respectable authority heading in almost all directions anent interpretation of statutes dealing with airport operation. The variegation ably is treated in 66 A.L.R.2d 634. We prefer to conclude that our statutes have spoken rather clearly and emphatically in favor of tagging the operation of airports in this state by state political subdivisions under statutory authority as being accomplished in a governmental capacity, and until it is alleged and justified as an operation either sanctioned by different future legislation, the municipal airport at Salt Lake City must be held to be operating under such capacity.

CROCKETT, C. J., and WADE, McDONOUGH and CALLISTER, JJ., concur.