366 P.2d 986

**W. L. COBIA, Plaintiff and Appellant,**

v.

**ROY CITY, a municipal corporation, Defendant and Respondent.**

No. 9483.

Supreme Court of Utah.

Dec. 8, 1961.

**376**

Kunz & Kunz, Ogden, for appellant.

Dale T. Browning, Ogden, for respondent.

HENRIOD, Justice.

Appeal from a judgment on the pleadings in favor of Roy City, an industrial city of about 10,000 population. Affirmed. No costs awarded.

Our concern is whether an incorporated city is liable for damage resulting from a sewer stoppage on a theory of 1) negligence or 2) nuisance, in an isolated case, where the question pointed up is whether operation of a sewer is governmental or proprietary. Under the facts of this case, and because of what we have said before, we think the result is the same whether it is urged on negligence or nuisance grounds. We express no opinion as to a situation where the condition is one resulting in continuing damage.

■ Utah constantly has adhered to the principle of governmental immunity where the sovereign has been attacked on account of injury to property, which principle has been applied to state activity or that of its agencies, such as school boards, cities, counties, the highway department, and the like.[1]

---

[1] Hjorth v. Whittenburg, (1952) 121 Utah 324, 241 P.2d 907, involving construction of a viaduct; State v. Tedesco, (1955) 4 Utah 2d 31, 286 P.2d 785; Wilkinson v. State, (1913) 42 Utah 483, 134 P. 626, having to do with flood waters; Campbell Bldg. Co. v. State Road Comm., (1938) 95 Utah 242, 70 P.2d 857; Fairclough v. Salt Lake County (1960) 10 Utah 2d 417, 354 P.2d 105; Bingham v. Board of Education, (1950) 118 Utah 582, 223 P.2d 432, where a school board was held not liable for burning trash; Ramirez v. Ogden City, (1955) 3 Utah 2d 102, 279 P.2d 463, 47 A.L.R.2d 539, dealing with a city recreational area; Alder v. Salt Lake City, 64 Utah 568, 231 P. 1102, having to do with maintenance of a park and putting on a pageant; Davis v. Provo City, 1 Utah 2d 244, 265 P.2d 415, where the city maintained a sleigh-ride hill; Jopes v. Salt Lake County, 9 Utah 2d 297, 343 P.2d 728, where injury was suffered at a county-owned and operated golf course; Wade v. Salt Lake City, 10 Utah 2d 374, 353 P.2d 914, operating a municipal airport waiting room; Niblock v. Salt Lake City, 100 Utah 573, 111 P.2d 800, where it was held that constructing or repairing streets is a governmental function and the city is not liable, absent statutory requirement.

■ It is recognized that there is but one Utah case having to do with sewers, which was decided before statehood (1892) (Kiesel v. Ogden City, 8 Utah 237, 30 P. 758) which determined that the operation of a sewer was actionable against the city if negligence was shown to exist. So far as that case is inconsistent with what is said here, it is reversed, particularly since that case predated our state sovereignty, our Constitution and subsequent legislation that gave new breadth and immunity to state agencies, except where specifically waived.[2] Our court consistently has held such agencies, including cities, immune from tort liability where such agency has acted in a governmental capacity rather than in a proprietary one, as is reflected in the cases cited in footnote 1 hereof, including the burning of trash by a school board,[3] repairing and maintaining streets by cities, absent legislation waiving immunity,[4] operating a recreational area,[5] maintaining a park,[6] maintaining an area for sleigh riding,[7] operating a municipal golf course,[8] and operating a municipal airport waiting room.[9]

It seems to us that the operation of a sewer more nearly is governmentally charged than are most or all of those situations we have reviewed, as reflected in the cases just mentioned. To exclude the operation of sewers from this field reasonably would seem unjustifiable in logic or otherwise. To do so would do violence to our concept of separation of powers, we believe. We have left to the Constitution and legislature the matter of waiver of immunity in such cases.

■ We have committed ourselves to a test we consider accurate in determining what a governmental function is as opposed to a proprietary one. In the language of Mr. Justice Crockett in Ramirez v. Ogden City, mentioned above, it was said that:

> "The most general test of governmental function relates to the nature of the activity. It must be something done or furnished for the general public good, that is, of a 'public or governmental character', such as the maintenance and operation of public schools,

2. The intent of the legislature to immunize state agencies against tort liability generally is reflected in certain legislation permitting suits against specific agencies under certain circumstances: See Title 10–7, U.C.A.1953, allowing suits against cities where injury may have been suffered because of disrepair of streets and sidewalks; Title 32–1–28, providing for suits against the liquor commission, with the governor's consent; Title 78–11–9, allowing suits against the state itself in cases involving real estate, etc.
3. Bingham v. Board of Education, supra.
4. Niblock v. Salt Lake City, supra.
5. Ramirez v. Ogden City, supra.
6. Alder v. Salt Lake City, supra.
7. Davis v. Provo City, supra.
8. Jopes v. Salt Lake County, supra.
9. Wade v. Salt Lake City, supra.

hospitals, public charities, public parks or recreational facilities. In addition to the above mentioned general test these supplemental ones are also applied: (a) whether there is special pecuniary benefit or profit to the city and (b) whether the activity is of such a nature as to be in real competition with free enterprise."

It seems quite obvious that this case cannot hurdle the above test nor the precedents to which we are committed. This, in the light of our legislative history. We say this, in numbering sewers among the other situations about which we have spoken, with a concession that we do so as members of a minority of the courts that have met this problem.[10] On the other hand we take considerable comfort in the most respectable authorities that agree with our conclusion that the operation of sewers is of a governmental nature, rather than proprietary.[11] All of the members of this court, at one time or another have expressed the elementary principle that in cases of similar import, we must not judicially legislate, but must, in our tri-partite form of government, leave to the legislature whether there should be a waiver of immunity where one of the state's agencies is functioning in a governmental capacity, such as repairing streets, operating parks, playgrounds,—and sewers. That sewers are includable in the class was pointed up by language in a recent case issuing from this court [12] when it was said that "It is * * * so patent as to hardly require demonstration that the maintenance of a sewage disposal system is a proper function of the city." It would seem to be unreasonable to say that a city must respond in damages for sewer cloggage, but would not be responsive where one may find himself or his property in a sewer because of the negligence of the city.

The cases that isolate sewers as a subject for liability do not seem to say why, except that somehow the municipality should respond in damages. Many of them come to the conclusion with a paradoxical respect for immunity, if the subject matter is a city street or other civic facility. There seems to be a sorted-out reverence for imposing liability in sewer cases, without any realistic reason that separates it from immunity in other situations that seem to have more distant kinship to what we know as a governmental function than does a municipally operated sewer system. They seem to come to such conclusion arbitrarily

10. Rhyne, Municipal Law, "Municipal Tort Liability," Sec. 30–32, p. 769; 59 A.L.R. 2d 176, et seq.

11. See cases cited in footnotes 40 to 47, Rhyne, Municipal Law, under Secs. 30–32, "Municipal Tort Liability," p. 773.

12. State Water Pollution Control Bd. v. Salt Lake City, (1957) 6 Utah 2d 247, 311 P.2d 370.

without apology for or recognition of the fact that they may be legislating judicially. They seem to do so without considering that an adjunct to the privilege and benefit of citizenship in a community furnishing desired and oft times necessary municipal services, occasional unremunerated hardship might be exacted of the citizen in the interest of the public weal.[13]

It is not enough simply to say that an operation is "proprietary." The sewer, as the rose, would smell as sweet by any other name. Fact is, that in each individual case, the activity must fall within the test mentioned, whence it would be governmental, but, falling without it, may be proprietary or even ultra vires, as the facts may disclose. We think a municipally operated sewer to come within the test and so hold.

Our personal feeling is, that on moral and social grounds an eventuality like that here, where an overflowing sewer floods a home, should somehow be compensable if negligence is shown. The city did have a liability policy, purporting to cover the loss, but still asserted the defense of sovereign immunity, which apparently was a waste of taxpayers' money. The defense resulted in an unfortunate, untimely and uncompensable loss to Mr. Cobia, whose only recourse would have been to have had a policy of his own to protect against such mishap. Regrettably, we, as interpreters of the

principles of liability in such cases, cannot supply a remedy therefor. It occurs to us that there must be a constitutional and legal vehicle in which the city could carry such protection against such damage.

WADE, C. J., and McDONOUGH, CALLISTER and CROCKETT, JJ., concur.

13. Barber v. Moss, (1955) 3 Utah 2d 268, 282 P.2d 838, 50 A.L.R.2d 1436.