371 P.2d 211

Arnold BRINKERHOFF and Inez Brinkerhoff, his wife, Plaintiffs and Respondents,

v.

SALT LAKE CITY, a municipal corporation, Defendant and Appellant.

No. 9456.

Supreme Court of Utah.

May 4, 1962.

Weber Basin Water Conservancy District v. Nelson, 11 Utah 2d 253, 358 P.2d 81; Wellman v. Noble, 12 Utah 2d 350, 366 P. 2d 701.

Norman W. Kettner, A. M. Marsden, Asst. City Attys., Salt Lake City, for appellant.

1. Charvoz v. Salt Lake City, 42 Utah 455, 131 P. 901, 45 L.R.A.,N.S., 652 (1913). Also, in Sehy v. Salt Lake City, 41 Utah 535, 126 P. 691, 42 L.R.A.,N.S., 915

Stewart, Topham & Harding, Gerald R. Miller, Salt Lake City, for respondents.

HENRIOD, Justice.

Appeal from a judgment after verdict in favor of plaintiffs, incident to the loss of their two-year-old child by drowning in a canal used by the City. Reversed, with no costs awarded.

A count based on attractive nuisance was rejected by the trial court, and rightly so.[1] The remaining count alleged that the City "negligently designed, laid out, constructed and maintained the bridge, street and sidewalks along Charlton Avenue without providing an adequate fence or other barricade along said canal or between the canal and the sidewalk where the sidewalk passes over the canal," in which plaintiffs' child, residing several houses east thereof, was drowned. The allegation was proper under Title 10–7–77, Utah Code Annotated 1953, having to do with *defective streets, alleys, sidewalks, bridges and the like*. Under that title, so far as negligent maintenance of such facilities by a city is concerned, immunity is waived, if certain statutory procedures are closely followed with respect to notice of and filing of claims, otherwise, such defense would be assertable.

(1912), we indicated that there was no duty to keep the stream in a safe condition and free from obstruction.

There was no pleading or proof that the City used the canal in any but a governmental capacity. This differentiates the instant case from Brown v. Salt Lake City,[2] relied upon in plaintiffs' memo to the trial court.

Conceding that we review in a light most favorable to the verdict, the evidence conclusively indicated that the street, sidewalks, and bridge were neither defective nor negligently designed, laid out, constructed and maintained, which evidence we cannot ignore, and there appears to be nothing to indicate that any such defect had any causal connection with the resulting death. The only complaint left was that the street, sidewalks and bridge should have been supplemented with a fence or barricade other than the bridge abutments which were shown to have been of standard construction. Nonetheless, the court, over objection and a claim of immunity, permitted an enlargement of the issue to include the question whether the city was negligent in failing to fence the canal itself.

Plaintiffs' points 2 and 3 on appeal urge that the City was negligent a) because it "maintained an open canal in a residential area" and that b) "a property owner is liable for injuries to trespassing children if he has knowledge that children trespass thereon, yet maintains an artificial condition which involves unreasonable risk of death or injury to them, and which they are not likely to discover, where the utility of such condition is slight as compared to the risk to children." [3]

It was undisputed that the City patrolled the stream regularly and warned children to stay away. Natural growth and a pathway along the canal were shown to exist. It was as it is, before the advent of housing nearby. An expert said "unless I miss my guess * * * part of the canal * * * was put in by Brigham Young in helping to transport granite blocks from out of the

2. 33 Utah 222, 93 P. 570, 14 L.R.A.,N.S., 619.
3. Subdivision (a) above obviously was a paraphrase of Sec. 339, Torts Restatement. Equally as obvious, that section is not apropos, since it takes no account of the defense of immunity, does not apply to open streams, and has to do with a private property owner's active and affirmative creation of a "structure or other artificial condition." The illustrations posed there are such as leaving dynamite caps on mining property where it is known children are wont to play; permitting high tension wires to become uninsulated and to sag onto magnolia trees near an open highway where children were known to play; and in permitting a turntable close to an open highway where a simple lock would have eliminated any danger (the note pointing out, however, that companies generally are not responsible under the turntable cases.) Nowhere are found cases remotely similar to a waterway like that here, nor is reference made to immunity. It is concerned with artificial situations, mostly mechanical, created by private property owners, knowing of inherent dangers,— not with open waterways coursing through many miles in a natural or what appears to be a natural waterway to anyone who might observe.

canyons into Temple Square, where they were building the temple." The stream was diverted from a natural waterway years ago, and except for such rerouting, has been and still is in all respects a natural waterway with banks and characteristic shrubbery along its course. The people came to it, and the physical attributes thereof, in logic or reason, cannot charge it with any greater tortious proclivity in its ancient flow of upwards of 100 years, than could be charged to the Weber, Sevier, City Creek, Cottonwood, Millcreek or a thousand other streams in the state.

It is admitted that the child could have had access to the canal at various points along the canal on both sides of the bridge, and there was some testimony that indicated that a small dog companion was seen to be barking at a point where the bridge spanned the current. This circumstance would seem to be non-probative of the claim of defect in the street or bridge or indicative of any duty to fence a stream.

We have difficulty in seeing where the City was negligent at all, since it has no statutory or other duty generally to fence such a stream. But assuming a case where there might be such an issue, we believe that where there are no defects in the street or bridge allowing suit against a city by special legislative interdiction permitting it, the expansion of the issues to include one for negligence in failing to fence, transports the case from the realm of statutory permission to sue, into the area where a governmental agency may assert the defense of immunity, and also to assert non-negligence in failing to fence a stream of long standing.

Heretofore, we have held that there was such immunity in the case of flood waters,[4] injuries resulting from burns incident to a schoolyard incinerator,[5] operation of a recreation area,[6] collapse of a grandstand at a July 4th pageant,[7] operation of a sleigh-riding area,[8] a golf course,[9] an airport waiting room,[10] and a sewer.[11]

4. Wilkinson v. State, 42 Utah 483, 134 P. 626 (1913).

5. Bingham v. Bd. of Ed., 118 Utah 582, 223 P.2d 432 (1950).

6. Ramirez v. Ogden City, 3 Utah 2d 102, 279 P.2d 463, 47 A.L.R.2d 539 (1955).

7. Alder v. Salt Lake City, 64 Utah 568, 231 P. 1102 (1924), where there is language particularly significant to the case here, where it was said that with respect to the question of immunity, "the exception in the case of streets is founded on public policy and expediency, and is

recognized in this state by *legislative* act. * * * If the exception is to be extended to parks and playgrounds, the *legislature and not the courts* should determine the question."

8. Davis v. Provo City, 1 Utah 2d 244, 265 P.2d 415 (1953).

9. Jopes v. Salt Lake County, 9 Utah 2d 297, 343 P.2d 728 (1959).

10. Wade v. Salt Lake City, 10 Utah 2d 374, 353 P.2d 914 (1960).

11. Cobia v. Roy City, 12 Utah 2d 375, 366 P.2d 986 (1961).

Since the trial court rejected the attractive nuisance theory urged by plaintiffs, it becomes difficult to conclude that failing to fence the stream would generate liability simply because natural growth of brush and trees along the channel's banks made it less, not more attractive to children. Nowhere was there any assertion of liability for failure to remove such growth, but the jury was relegated to the determination of negligence on a failure to fence.

The impact of this case becomes obvious. Simply it is this: that to conclude that a city is liable for such failure, the jury might determine that every hamlet, village, town, city, county or private property owner would have the onus of responding in damages if, when others construct a home or homes nearby, the flow of a natural river, stream, open canal or ditch, were not fenced. The implication would be that thousands of miles of rivers, streams, irrigation canals and ditches, including such rivers as the Sevier, Virgin, Cottonwood, City Creek, Millcreek, American Fork, the Provo, Jordan, Duchesne, Green, the Surplus Canal, and hundreds of others would require fencing if people chose to build near the stream. This court negatived any such concept in the Charvoz case, involving the death of a child in a city ditch carrying water 10 to 12 inches in depth.

12. 100 Utah 573, 111 P.2d 800 (1941).

In Niblock v. Salt Lake City,[12] we pointed out that "the duty to repair or construct streets * * * is a governmental one and that *in the absence of a statute* no liability devolves on a municipality for the defective condition of its streets." There is nothing in the instant case showing that the city operated the stream in a proprietary capacity, rather than governmental[13] or could not assert the defense of immunity.

 Inescapably, therefore, it follows that under existing pronouncements of this court, the operation of an open, ancient canal, cannot impose liability on a city upon the advent of building near it, without legislative sanction. Inescapably it follows that the plaintiffs, failing to tie down the gravamen of their complaint of defective street, have no recourse to an issue created during trial, basis for which has no legislative or judicial support.

(Emphasis ours.)

CALLISTER and CROCKETT, JJ., concur.

McDONOUGH, Justice (dissenting).

I dissent. The record discloses that on the 17th day of September, 1957, Paul Arnold Brinkerhoff, the deceased two year and two-month old son of the plaintiffs, was drowned in the Jordan and Salt Lake City

13. Griffin v. Salt Lake City, 111 Utah 94, 176 P.2d 156 (1947).

Canal. His body was found in the canal where it crosses under 27th South Street at approximately 12th East in Salt Lake City. The parents of the child, at the time of the death, resided four houses and approximately 200 feet east of the canal. The surrounding neighborhood is heavily populated.

The Jordan-Salt Lake Canal is an artificial canal constructed about a hundred years ago. It is from six to ten feet wide and from three to four feet deep. The canal has the appearance of being a natural waterway, because of its long existence, as compared with the residential area that has grown up around it. The canal is uncovered and unfenced. The banks or sides are smooth in places and bushy, and steep in others, containing heavy vegetation and trees, sticks and debris on the banks. Paul could have reached the canal by a number of routes, that were well trodden and used extensively by children. The City employed a man to check the canal periodically and to remove debris from the trash gates. He testified that he often told children to leave the area of the canal and to not play by the canal.

In the past years, because of several near-drownings, the residents of the area had prepared and presented to the City a petition seeking affirmative relief from the dangers of the canal. On one occasion the Mayor visited the area and met with the citizenry, but the canal remained uncovered or unfenced because of apparent lack of funds in the municipal corporation. Shortly after the accident herein, the canal was covered and enclosed in a pipe.

I am of the opinion the defendant was negligent in maintaining an open, unbarricaded canal through a residential area of the City. The lower court, sitting with a jury, held the defendant City liable. I agree the court was right in rejecting the count based on attractive nuisance.

The plaintiffs argue and rely upon Restatement of Torts, Section 339:[1]

"A possessor of land is subject to liability for bodily harm to young children trespassing thereon caused by structures or other artificial conditions which he maintains upon the land if:

"(a) the place where the condition is maintained is one upon which the possessor knows or should know that such children are likely to trespass, and

"(b) the condition is one of which the possessor knows or should know and which he realizes or should realize as involving an unreasonable risk of death or serious bodily harm to such children, and

"(c) the children because of their youth do not discover the condition or

1. A.L.I. Restatement of Torts, Section 339.

realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and

"(d) the utility of the possessor of maintaining the condition is slight as compared to the risk of young children involved therein."

This section has received favorable comment from writers and judges.[2] Prosser refers to the section as perhaps the "most effective single section" of the Restatement of Torts. He states that the jurisdictions that follow the section have "discarded the theory of allurement to trespass and have treated the rule as one of ordinary negligence liability." This acceptance of the section by a majority of the states has broadened the liability of the landowner and has given greater protection to the trespassing child.

I think that the facts of this case fall within this section of the Restatement, and that the lower court was correct in finding the defendant liable.

Paragraph (b) of the Restatement[3] refers to the knowledge required by the landowner of the presence of trespassing children. Prosser states that the courts have set up categories of conditions where the possessor is free to assume that children of insufficient age should not be allowed at large by their parents, and where the child should appreciate the danger. One of these categories is where the only risk is drowning in water, and in the absence of special circumstances, recovery has usually been denied.[4] But, exceptions have been made in two groups of cases: (1) where the landowner knows or has reason to know that the trespassing children are so *extremely* young that they cannot appreciate the danger, and (c) where there is an enhanced risk that is greater than the ordinary, such as deceptive and false overhanging banks on a stream.[5]

The evidence here indicates the presence of both of these exceptions. The canal is in a heavily populated area that contains

2. See Prosser, "Trespassing Children," 47 Cal.L.R. 427 (1959).
3. Supra, footnote 2.
4. Brown v. Salt Lake City, 33 Utah 222, 93 P. 570, 14 L.R.A.,N.S., 619, 126 Am. St.Rep. 828, 14 Ann.Cas. 1004; Smalley v. Rio Grande Western Railroad, 34 Utah 423, 98 P. 311; Charvoz v. Salt Lake City, 42 Utah 455, 131 P. 901, 45 L.R.A., N.S., 652; Bogdon v. Los Angeles & S. L. R. Co., 59 Utah 505, 205 P. 571; Payne v. Utah-Idaho Sugar Co., 62 Utah 598, 221 P. 568; and Davis v. Provo City Corp., 1 Utah 2d 244, 265 P.2d 415.

5. Anderson v. United States, 138 F.Supp. 332 (D.C.Cal.) 1956: Action against United States for damages for death of plaintiff's three-year old boy who drowned in defendant's canal. The court held for plaintiff and rejected defendant's contentions that child was a trespasser and that the pond of water was not per se an attractive nuisance, by saying: That rule is subject to modification in favor of a child of tender years who has no appreciation of the danger involved.

many small children. The defendant's employee was aware of children playing in and about the canal; the Mayor was petitioned and even personally visited the site. There was ample knowledge of the presence of small children near the stream.

The evidence also discloses that the stream was brushy and had overhanging weeds and branches in various places. These features make the stream unusually risky to small children.

Paragraph (d) of the Restatement,[6] referring to the balancing of risk against utility is favorable to the plaintiffs. The defendant's efforts of continually telling the children to not play around the canal is not sufficient. The fast urbanization of sections of our cities requires greater effort in behalf of the City to protect its citizens from dangers made apparent by the influx of the people.

All of the elements necessary for liability as set out in Section 339 of the Restatement of Torts are present in this case, and I believe that this is and should be the law in Utah.

Plaintiffs did not claim that their son's death was due to the negligent maintenance of the canal by the defendant but based their cause of action on the fact that "defendant negligently designed, laid out, constructed, and maintained the bridge, street and sidewalks along Charlton Avenue without providing an adequate fence or other barricade along said canal or between said canal and the sidewalk where the sidewalk passes over the canal." It is my opinion that in a community containing many residences in which children reside the maintenance of bridges, streets or sidewalks close to a canal without providing an adequate barricade comes within the provisions of Sec. 10–7–77, U.C.A.1953, which provides for claims for damages against a city for the "unsafe, dangerous * * * condition of any street, etc." and therefore the question of immunity from damages because the canal was being maintained in a governmental rather than proprietary capacity by the defendant is not applicable under the facts of this case. The negligence alleged was not the maintenance of the canal but rather the maintenance of the street in an unsafe and dangerous condition in a populous section near the canal without adequate protection for children by barricading the street and bridges from the canal.

I would affirm the judgment.

WADE, C. J., concurs in the dissenting opinion of McDONOUGH, J.

6. Supra, footnote 1.