Coralee **GREENHALGH,** for herself and minor son Patrick Greenhalgh, and William T. Greenhalgh, Plaintiffs and Appellants,

v.

**PAYSON CITY et al.,** Defendants and Respondents.

No. 13695.

Supreme Court of Utah.

Jan. 2, 1975.

Frank N. Karras, Salt Lake City, for plaintiffs and appellants.

Ray R. Christensen of Christensen, Gardiner, Jensen & Evans, Salt Lake City, for Payson City.

Glenn C. Hanni of Strong & Hanni, Salt Lake City, for Dr. Hogan.

CROCKETT, Justice:

Plaintiffs Greenhalgh, in their own right, and as parents of infant son Patrick, sued for various damages (the detail of which is not material in view of our disposition of this appeal) alleged to have resulted from negligence of the defendants Payson City Hospital and Dr. Robert Hogan in the improper typing of the Rh negative blood of plaintiff Coralee Greenhalgh and her newborn baby, Patrick Greenhalgh. After a hearing, and pursuant to defendants' motions to dismiss, the court ruled that these causes of action, which were not filed until nearly four years (46 months) after the alleged injury occurred, were barred by statutes of limitations, which are discussed below; except only that on behalf of the infant Patrick Greenhalgh against Dr. Hogan, which is not involved in this appeal.

The order of dismissal was made pursuant to Rule 12, U.R.C.P., for failure to state a claim upon which relief can be granted; and consequently we accept the version of the facts as contended by the plaintiff.[1]

In October 1969, plaintiff Coralee Greenhalgh went to defendant Dr. Robert Hogan for medical attention and care concerning her pregnancy and the birth of her child expected in January. Proper and satisfactory care was given until the birth of the baby, Patrick, on January 14, 1970, in the Payson City Hospital. After the birth of the child, his condition and that of his mother continued to worsen. Four days later, on January 18, he was transferred to the Utah Valley Hospital. There it was discovered that the baby's blood had been typed erroneously and that the incompatability with the mother's Rh negative blood resulted in the production of antibodies which caused serious physical injury to both the mother and son.

An initial problem requiring attention is whether the operation of a hospital by Payson City is covered by our Governmental Immunity Act. In regard to the modern trend toward legislative changes in tort liability of public entities three basic patterns are followed: (1) retention of general immunity with specific statutory exceptions; (2) recognition of general tort liability with limitations as to the amount of damage and (3) recognition of general tort liability with specific statutory exceptions.[2] The Utah Governmental Immunity Act adopts the first pattern noted above, of preserving generally governmental immunity as stated in Section 63–30–3, U.C.A. 1953:

> Except as may be otherwise provided in this act, all governmental entities shall be immune from suit for any injury which may result from the activities of said entities wherein said entity is engaged in the exercise and discharge of a *governmental* function. (Emphasis added.)

██ The argument is made that the term "governmental function" in that stat-

1. See 2A Moore's Federal Practice, Para. 12.08.

2. Van Alystyne, Governmental Tort Liability: A Decade of Change, 1966 Ill.L.F. 919.

ute is used in its generic sense to include any activity performed by a governmental entity; and that this conforms to the trend toward abolishing the sometimes difficult to apply distinctions between "governmental" and "proprietary" functions. It is suggested that the legislature may have reasoned that since governmental entities were already liable for injuries arising from proprietary activities, it was not necessary to provide a specific exception to immunity for them in the act. But there are other aspects of this problem to be considered. It is certain that prior to this enactment those terms had been widely used and had come to have distinct and antithetical meanings in our law.[3] We should assume that the legislature was aware of this and that they used their language advisedly.[4] Therefore, if it had intended to include proprietary functions within the scope of the act, it could have easily so indicated by omitting the final phrase, "governmental function," from the just quoted Section 63–30–3.

■ Concerning the legislative intent about changing the law as to liability of governmental entities, Section 63–30–4, U.C.A.1953, is pertinent:

Nothing contained in this act, unless specifically provided, is to be construed as an admission or denial of liability or responsibility in so far as governmental entities are concerned. . . .

It seems plain enough that the intent of that statute was to retain the then existing law, both as to immunity and as to liability, except for the non-exempt areas specifically set forth in Section 63–30–10 of the new act, none of which covers the operation of a hospital. It is therefore our con-clusion that proprietary functions of a municipality are not within the coverage of the Utah Governmental Immunity Act.[5]

■ The next question confronted is whether the operation of the hospital is a proprietary or a governmental function. In regard to such problems various factors are considered. A primary one is whether the activity is something which is done for the general public good and which is generally regarded as a public responsibility. Coupled with this, other matters considered are whether there is any special pecuniary benefit to the City; and also, whether it is of such a nature as to be in competition with free enterprise.[6]

In varying fact situations cases can be found on either side of the proprietary versus governmental function distinctions in regard to the operation of a hospital by a city.[7] This court has not specifically dealt with the issue of the immunity of municipally operated hospitals, but in Sessions v. Thomas D. Dee Memorial Hospital[8] in a carefully considered decision, we discussed the various factors and considerations of policy in denying immunity to a charitable hospital. Along with the factors recited above, some emphasis was placed upon the patient's payment for the services and the desirability of encouraging a high standard of care.

■■ We find helpful a case from our neighboring state of Idaho, Henderson v. Twin Falls County.[9] There the court discussed the factors and considerations of policy dealt with in our case of Sessions, supra, and concluded that the county hospital was acting in a proprietary capacity. We regard the reasoning and conclusion of

3. Ramirez v. Ogden City, 3 Utah 2d 102, 279 P.2d 463; Bingham v. Board of Educ., 118 Utah 582, 223 P.2d 432.

4. Cottonwood City Elec. v. Salt Lake Co. Bd. of Comm'rs, 28 Utah 2d 121, 499 P.2d 270.

5. Cobia v. Roy City, 12 Utah 2d 375, 36 P.2d 986; Jopes v. Salt Lake Co., 9 Utah 2d 297, 343 P.2d 728. The commentators have taken a similar position; see Van Alystyne, cited in footnote 2 and Creer, Utah Governmental Immunity Act: An Analysis, 1967 Utah L. Rev. 120.

6. See Ramirez v. Ogden City, footnote 3 above.

7. 2 Yockley, Municipal Corps., Sec. 422 (1957); Rhyne, Municipal Law, Sec. 30–24 (1957).

8. 94 Utah 460, 78 P.2d 645.

9. 56 Idaho 124, 50 P.2d 597.

that case as persuasive. Particularly so because it is consistent with the general trend of the more recent decisions on that subject.[10] In harmony with what has just been said, under the facts as accepted on this appeal, it is our opinion that the operation of the hospital by Payson City is in a proprietary capacity. Hence we are not concerned with the procedural requirements of the Governmental Immunity Act. But we have previously held uniformly that as to proprietary activities the requirement of notice to the city provided in Section 10–7–77, U.C.A.1953, is comprehensive in its coverage and includes tort causes of action.[11] It states in part:[12]

> . . . Every claim, . . . against any city or town must be presented, . . . to the governing body within one year.

. . . . . .

Further Section 10–7–78, U.C.A.1953, insofar as material here, provides:

> It shall be a sufficient bar and answer to any action . . . mentioned in section 10–7–77, that such claim had not been presented to the governing body of such city . . . within the time specified in section 10–7–77; . . .

Plaintiffs plead that the improper typing of blood occurred in January, 1970. Inasmuch as no claim was presented to the City within the year as required by the statute just recited, their action against the City is barred.

This court has heretofore considered the question of the priority of these specific statutes of limitation as compared to the provision of Section 78–12–36, U.C.A.1953, dealing with the tolling of the running of a statute of limitations during the minority of a child in Gallegos v. Midvale City; and for reasons set forth therein, held that the specific requirement of notice to the city takes precedence.[13] It was pointed out that this was particularly so where, as in this case, the child was in the active care of its parents who could have proceeded within the time allowed by law. It is our conclusion that the failure to comply with the notice provisions of Section 10–7–77 serves as a bar against maintaining a cause of action against defendant Payson City for him.[14]

Plaintiffs' position on the issue of limitations as to Dr. Robert Hogan is that when the cause of action against the Doctor arose, in January 1970, the general tort statute of limitations, (Section 78–12–25, U.C.A.1953) was in effect; and that they thus had four years, until January, 1974, in which to commence their action.[15] However, the 1971 legislature enacted Chapter 212, S.L.U.1971, (in our code as 78–12–28) which provided that a civil action can be commenced only:

> Within two years:
>
> . . . . . .
>
> (3) An action against a physician and surgeon, . . . for professional neg-

10. See for example, Kardulas v. City of Dover, 99 N.H. 359, 111 A.2d 327; Sears v. City of Cincinnati, 31 Ohio 2d 157, 285 N.E.2d 732.

11. Dahl v. Salt Lake City, 45 Utah 544, 147 P. 622.

12. The notice provisions of this section, prior to its amendment in 1973, are controlling as to notice requirements, since the cause action arose in January 1970 and the statutory time allowed for notice ran before the amendment of 1973 became effective.

13. 27 Utah 2d 27, 402 P.2d 1335; see also Hurley v. Town of Bingham, 63 Utah 589, 228 P. 213.

14. Here we note the cause of action against defendant Payson City accrued in Jan. 1970 and was barred after Jan. 1971, thus the

1973 amendment to Sec. 10–7–77, U.C.A.1953 (Supp.1973), which provides: " . . . If the person for whom the claim is made is a minor, then the claims covered by this section may be so presented within the time limits specified above or within one year after the person reaches the age of majority, whichever is longer.", is not applicable in this case because as was held in Ireland v. Mackintosh, 22 Utah 296, 61 P. 901, "The subsequent passage of an act by the legislature increasing the period of limitation could not operate to affect or renew a cause of action already barred."; see 51 Am.Jur.2d, Limitations of Actions, § 44.

15. Christiansen v. Rees, 20 Utah 2d 199, 436 P.2d 435.

ligence . . . two years after the date of injury or two years after the plaintiff discovers, or through the use of reasonable diligence, should have discovered the injury, whichever occurs later, but not to exceed ten years in any instance, . . ..

This amendment became effective on May 11, 1971.[16] Section 78–12–47 which was part of the same legislative act, provides in part:

. . . This act shall not be construed to be retroactive.

Plaintiffs contend that the trial court acted retroactively in violation of that section in applying the newly enacted Section 78–12–28(3) to shorten the time for filing this cause of action. With this contention we do not agree. It is to be noted that although the effect was to shorten the time in which it was asserted, the right of action was not eliminated.

■ It is well established that the legislature may reduce a period of limitations and apply a new and shorter period to previously accrued causes of action, so long as a reasonable time is allowed to bring such an action;[17] and that the effect of the new statute commences upon the effective date of the statute.[18] The result of this is actually prospective in that the statutory change relates to procedure to occur in the future. Thus the plaintiffs had two years from the effective date of this statute, or until May 11, 1973, to assert their cause of action. This, coupled with the previously elapsed time, gave them forty plus months. So the period for the bringing of their action was shortened by a little over seven months; and the time available to them to bring their action after the new statute of limitations amply meets the requirement of allowing them a reasonable time in which to do so.[19] Consequently, we are in agreement with the trial court's ruling that the plaintiffs' cause of action was barred when it was filed in December of 1973.

For the above reasons the decision of the trial court should be affirmed.

HENRIOD and TUCKETT, JJ., concur.

ELLETT, Justice (concurring and dissenting).

I concur except as to the dismissal of the infant's cause of action. As to that matter I dissent for reasons stated in my dissenting opinion in the case of Gallegos v. Midvale City, 27 Utah 2d 27, 492 P.2d 1335.

CALLISTER, C. J., concurs in the views expressed in the concurring and dissenting opinion of ELLETT, J.

---

16. Chapter 212, Sec. 1, Laws of Utah 1971.

17. Toronto v. Sheffield, 118 Utah 460, 222 P.2d 594.

18. Day & Night Heating Co. v. Ruff, 19 Utah 2d 412, 432 P.2d 43, and references cited therein.

19. See also Olivas v. Weiner, 127 Cal.App.2d 597, 274 P.2d 476, for the same result under a similar fact situation, where California reduced the period for asserting a medical malpractice cause of action.