Johnny **TRUJILLO**, a minor, By and Through his Guardian ad Litem, Barbara TRUJILLO, and Johnny S. Trujillo, Plaintiffs and Respondents,

v.

**BRIGHTON–NORTH POINT IRRIGATION COMPANY,** Val Jenkins and Nicea Jenkins, his wife, Lee Anna Coombs, and Gary J. Xanthos, Defendants and Appellants.

No. 19502.

Supreme Court of Utah.

Nov. 23, 1987.

Gary A. Frank, Murray, Ford G. Scalley, Salt Lake City, for defendants and appellants.

P. Keith Nelson, Salt Lake City, for Jenkins.

Richard A. Rappaport, Salt Lake City, for Xanthos.

John Rokich, Magna, for plaintiffs and respondents.

ZIMMERMAN, Justice:

Appellant Brighton–North Point Irrigation Company ("Brighton–North Point") filed this interlocutory appeal from the trial court's denial of its motion for summary judgment. Brighton–North Point argues that as a matter of law it could not be held liable for failing to safeguard children from dangers posed by water in an unfenced irrigation ditch. We agree with Brighton–North Point and conclude that it was entitled to the summary judgment it sought. We therefore reverse.

Brighton–North Point has owned and operated an irrigation canal in Salt Lake County since 1890. Water flows through the canal several days a week during the irrigation season. Water is allowed to pool in the ditch on off-days. The ditch runs along the east side of property on which stands an apartment complex owned by defendants Val Jenkins, Nicea Jenkins, Lee Anna Coombs, and Gary J. Xanthos. Respondents Barbara Trujillo and Johnny S. Trujillo and their sixteen-month-old son, Johnny, lived in the apartment complex. On August 8, 1981, Johnny Trujillo nearly drowned in a pool of standing water in the ditch. As a result, he suffered permanent injuries. The Trujillos sued both the apartment owners and Brighton–North Point for negligence in failing to fence or cover the ditch.

Brighton–North Point moved for summary judgment, arguing that this Court's prior decisions in *Charvoz v. Salt Lake City*,

42 Utah 455, 131 P. 901 (1913), and *Brinkerhoff v. Salt Lake City*, 13 Utah 2d 214, 371 P.2d 211 (1962), specifically held that canals and irrigation ditches do not fall within the attractive nuisance doctrine and that owners and operators of canals are not liable for personal injuries or deaths that result when children play in or fall into the water. The Trujillos acknowledged the *Charvoz* and *Brinkerhoff* decisions, but contended that they were a product of a different time and philosophy. They argued that the modern trend of authority, as set forth in section 339 of the Restatement (Second) of Torts, is to make all possessors of land subject to liability for harm to young children caused by conditions on their land if the factual tests set out in section 339 are met.[1] The Trujillos argued that under section 339 Brighton–North Point's liability is a question of fact to be determined from an examination of all the circumstances. Therefore, a summary judgment is inappropriate.

The trial court denied the summary judgment. In a written memorandum, the court accepted the Trujillo's reasoning and ruled that the policy reasons cited by this Court in *Charvoz* and *Brinkerhoff* are no longer viable and that section 339 provides a more persuasive and just standard.

On appeal, we are presented with essentially the same questions and arguments advanced below. Should we adhere to our old precedents that effectively insulate owners of canals and ditches from liability for harm suffered by small children? The answer does not require extended discussion. We have dealt with the question in another decision issued today, *Loveland v. Orem City Corp.*, 746 P.2d 763 (Utah

---

1. Restatement (Second) of Torts § 339 (1965) provides as follows:

A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if

(a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and

(b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will in-

volve an unreasonable risk of death or serious bodily harm to such children, and

(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and

(d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and

(e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children.

1987). In *Loveland,* at 772, we declined to depart from the law developed in *Brown v. Salt Lake City,* 33 Utah 222, 93 P. 570 (1908), *Charvoz,* and *Brinkerhoff.*

As we made clear in *Loveland,* the immunity bestowed by *Charvoz* and *Brinkerhoff* is a judicial creation. Therefore, its vitality is not determined by whether one chooses to analyze the question under the older attractive nuisance doctrine or under the newer and more flexible articulation of the standard in section 339 of the Restatement.[2] Instead, a rather pragmatic appraisal must be made of the reasons for the immunity rule and the effects of its repeal. We find continued vitality in the reasons originally supporting the rule. But even, more important are the potential negative consequences of its abolition.

We acknowledge that underground piping and increased urbanization and industrialization have probably made the carriage of irrigation water in open ditches and canals less common and less critical to the economic life of this state than it was at the turn of the century when *Brown* and *Charvoz* were decided. However, open ditches and canals are still ubiquitous in many parts of Utah, and they are still important to agricultural users and, by extension, to the state as a whole.

This is not to deny the point made twenty-five years ago by the dissenters in *Brinkerhoff* and by the plaintiffs in this case that urbanization has caused many more children to live closer to ditches and canals that were originally constructed in sparsely populated areas and that this has increased the risk of death or serious injury. *See Brinkerhoff,* 13 Utah 2d at 220–21, 371 P.2d at 216. An examination of our recent docket is enough to suggest that it is not uncommon for children to be drowned or badly injured. *See, e.g., Weber*

*v. Springville City,* 725 P.2d 1360, 1363 (Utah 1986); *Loveland,* 746 P.2d at 764. However, just because there is a perceived evil—unfenced or uncovered canals and ditches near populous areas with small children—does not mean that the most appropriate agency for fashioning a remedy is this Court or that the most appropriate remedy is wholesale abolition of the immunity established by *Charvoz* and *Brinkerhoff.*

As we noted in *Loveland,* fences or other safety measures that certainly are appropriate in some areas may be quite inappropriate in others. The state or local governments are far better suited than we to consider the countervailing considerations and are more capable of establishing very specific criteria for determining where and how protective measures should be taken. *Loveland,* 746 P.2d at 773. They also have better means of enforcing these requirements. Such specifically tailored remedies strike us as far more likely to ameliorate the problem than retroactively exposing all canal and ditch owners to liability.

There is also an issue of fairness. The cost of fencing or covering hundreds of miles of exposed ditches and canals would be enormous. Why should that burden be arbitrarily imposed on the relatively few owners of the ditches and canals? They have not brought the water to the children. Rather, it is the developers and owners of the adjacent lands who have brought the children to the water. If equitable considerations are taken into account, then the costs of protective measures should be imposed on those most responsible for the problem and on those best able to spread the costs throughout society—the developers and owners of the adjacent lands.[3] In

---

**2.** It is true that both the majority and the dissenters in *Brinkerhoff* thought that if the section 339 approach were adopted, it would have required the abandonment of the rule in *Charvoz,* which expressly excluded owners and possessors of canals and ditches from the attractive nuisance doctrine adopted in *Brown. See Brinkerhoff,* 13 Utah 2d at 216 n. 3, 219–20, 371 P.2d at 212 n. 3, 215. However, as we noted recently, that conclusion is not necessary. *Web-*

*er v. Springville City,* 725 P.2d 1360, 1365 (Utah 1986). This is because either doctrine, on its face, would result in liability for artificially created watercourses in the absence of a judicial rule withdrawing them from case-by-case treatment. *See id.*

**3.** In fact, some courts have suggested that under certain circumstances, liability may be imposed on an adjacent landowner. *See, e.g., Limber-*

any event, considerations of fairness argue against exposing owners of long-existing canals and ditches, such as Brighton–North Point, to liability from which they have been immune for more than eighty years.

For the foregoing reasons, and for the reasons stated in *Weber* and *Loveland,* we decline to depart from the rule of *Charvoz* and *Brinkerhoff.*[4] The decision of the district court is reversed.

HALL, C.J., STEWART, Associate C.J., and HOWE, J., concur.

DURHAM, Justice: (dissenting).

For the reasons set forth in my partial dissent in *Loveland v. Orem City Corp.,* 746 P.2d 763 (Utah 1987), I dissent. The majority acknowledges that this case is decided by judicially created doctrine, yet declines to assume responsibility for fashioning a remedy for current problems for which the doctrine is patently inadequate. Fairness and the pragmatic difficulties of such an undertaking are indeed important considerations, but there is no showing on this summary judgment record that such considerations may not be adequately addressed by the courts. Further, there is no showing whatsoever in the record that a significant concern of the majority—the cost of fencing—is in reality very important. For all we know, fencing open canals and ditches in urban and residential areas may, with modern equipment and materials, represent a nominal expenditure and one which is easily and fairly passed on to users. In my view, it is time to reexamine the factual bases for the 75–year–old doctrine affirmed by the majority and to ascertain whether the lives of children may not be more appropriately safeguarded by a rule of law designed for communities in the latter half of the twentieth century. I would remand for trial on the issue and leave questions of retroactivity to be determined after a full and fair hearing on the

economic and practical necessities associated with the business of maintaining safe irrigation ditches. I suspect that after such a hearing, this Court would be in a far better position to consider the efficacy of an analysis similar to that set forth in section 339 of the Restatement (Second) of Torts (1965).

---

hand v. *Big Ditch Co.,* 706 P.2d 491, 498–500 (Mont.1985).

4. It is important to note that neither this decision nor those in *Weber* and *Loveland* reach the question of the liability of an owner for harms resulting from dangers that are not inherent in

the very existence of canals and ditches. *See Weber,* 725 P.2d at 1366–67; *Loveland,* 746 P.2d at 773 n. 60 (quoting *Harris v. Buckeye Irrigation Co.,* 118 Ariz. 498, 501–02, 578 P.2d 177, 180–81 (1978)).