Gerald GOLDING, individually, and as representative of the heirs of Randal Golding, deceased, Plaintiff and Appellant,

v.

ASHLEY CENTRAL IRRIGATION COMPANY, a Utah corporation, Defendant and Appellee.

No. 940202.

Supreme Court of Utah.

Sept. 1, 1995.

Richard I. Ashton, David A. Wilde, Murray, for plaintiff.

Clark B. Allred, Gayle F. McKeachnie, Vernal, for defendant.

Glen E. Davies, Salt Lake City, for amicus Utah Farm Bureau Federation.

STEWART, Associate Chief Justice:

The plaintiff's son drowned in a canal owned by the defendant, Ashley Central Irrigation Co. ("Ashley"). In *Golding v. Ashley Central Irrigation Co.,* 793 P.2d 897 (Utah 1990) (*Golding I*), this Court reversed a judgment entered on the pleadings against the plaintiff in this wrongful death action and remanded to the trial court to determine the applicability of the Utah Limitation of Landowner Liability Act (the "Act"), Utah Code Ann. §§ 57–14–1 through –7 (1994). After additional discovery, the district court ruled that the Act applied and entered a summary judgment against the plaintiff. The plaintiff again appeals.

Ashley owns a canal that runs through the city of Vernal, Utah. For many years, various locations on the canal have been used as swimming holes. The canal is locally known as "the kids canal." Ashley has neither invited the public to swim in the canal nor posted signs prohibiting it. Randal Golding, a seventeen-year-old boy, went swimming in the canal with four friends. Randal first entered the canal at a location below the spillway of a dam that backed up water for an irrigation ditch outlet. He tested the water's depth and current. A friend, Jeff Jackson, happened by and warned them not to swim below the spillway because it was dangerous. He demonstrated the danger by tossing a piece of wood into the water where turbulence churned it under and by telling them that a year earlier he had almost drowned there. Fearing that it was not safe to swim below the dam, the boys decided to swim above it.

While climbing out of the canal to leave, one boy accidentally fell down the spillway and became trapped in the turbulence below.

Randal, having already exited the canal, jumped in and saved his friend but was unable to extract himself from the turbulence. He was found downstream shortly thereafter and died two days later.

The plaintiff, Gerald Golding, who is Randal's father, filed this action to recover damages from Ashley for failing to use ordinary care in constructing and maintaining the canal. The district court ruled that the Act applied and that Golding's allegations were insufficient to allege a claim for relief under § 57–14–6 of the Act. Accordingly, the court granted Ashley's motion for judgment on the pleadings. On the first appeal, this Court reversed on the ground that the pleadings were insufficient to establish that the protections afforded landowners by the Act were available to Ashley and remanded to determine the applicability of the Act and to conduct further proceedings.

On remand, Golding amended his complaint by adding a claim for willful or malicious failure to guard or warn against a dangerous condition. After discovery, Ashley again asserted the Act as a defense and moved for summary judgment. The district court granted the motion. Prior to the entry of summary judgment, Golding moved to amend his complaint a second time to add a claim that Ashley was negligent under the "rescue doctrine." However, neither party notified the clerk of the court to submit the motion to the trial court for decision, and as a consequence, the court did not rule on it.

In granting summary judgment for Ashley, the district court ruled that under the Act Ashley was not subject to liability for simple negligence and that the tragic death of Randal Golding was not caused by Ashley's willful, wanton, or malicious failure to guard or warn against a dangerous condition. The court stated:

> A condition which is inherent in the very existence of canals, which is open and obvious and not hidden, can not be the basis for establishing liability under a theory that the defendant has breached [its] duty to not wilfully and wantonly cause injury (Pratt) or not wilfully or maliciously cause injury (the "Act").

On this appeal, Golding claims that the trial court erred in ruling (1) that a landowner owes no duty of care to trespassers for open and obvious dangers; and (2) that the danger in Ashley's canal was open and obvious, not hidden. Golding also asserts that the court should have addressed the rescue doctrine. Golding does not assert that there are any issues of material fact, only that the trial court erred as a matter of law in its rulings. We review the court's decision for correctness. *Jackson v. Righter,* 891 P.2d 1387, 1389 (Utah 1995); *Pratt v. Mitchell Hollow Irr. Co.,* 813 P.2d 1169, 1171 (Utah 1991).

Golding's first argument is that the district court misconstrued *Pratt v. Mitchell Hollow Irrigation Co.,* 813 P.2d 1169 (Utah 1991), in ruling that a canal owner owes no duty to warn a trespasser of a dangerous condition in a canal that is open, obvious, and inherent in the nature of canals. We do not agree that the district court so held or misinterpreted *Pratt.*

The Act encourages landowners to allow the public to use their land for recreational purposes by limiting landowners' liability to persons who use the land. The Act provides that a landowner "owes no duty of care to keep the premises safe for entry or use by any person using the premises for any recreational purpose, or to give any warning of a dangerous condition, use, structure, or activity on those premises to those persons." Utah Code Ann. § 57–14–3. The Act does not, however, limit a landowner's "liability which otherwise exists for: (a) willful or malicious failure to guard or warn against a dangerous condition ... [or] (b) deliberate, willful, or malicious injury to persons or property." Utah Code Ann. § 57–14–6(1)(a), (b). Thus, if a landowner is guilty of willful or malicious failure to guard or warn of a dangerous condition or for deliberate, willful, or malicious injury, there is no immunity under the Act. *See Golding I,* 793 P.2d at 900; *see also Loosli v. Kennecott Copper Corp.,* 849 P.2d 624, 627 (Ct.App.), *cert. denied,* 860 P.2d 943 (Utah 1993).

The willful and malicious standard in § 57–14–6(1)(a) requires a landowner to have knowledge of a dangerous condition and of the probability that serious injury may be caused by that condition. *Golding I,* 793 P.2d at 901; *see Ewell v. United States,* 579 F.Supp. 1291, 1295 (D.Utah 1984), *aff'd,* 776 F.2d 246 (10th Cir.1985).

As a general proposition under the common law, a landowner is entitled to the exclusive use of his property in whatever manner he chooses, without having to protect those who enter the property without permission or right.[1] W. Page Keeton et al., *Prosser and Keeton on Torts* § 58 (5th ed. 1984) [hereinafter *Prosser*]. A landowner is entitled to assume that trespassers "will be particularly careful to discover dangerous conditions which are inherent in the use to which the possessor puts the land." Restatement (Second) of Torts § 335 cmt. f (1965); *see Weber v. Springville City,* 725 P.2d 1360, 1366 n. 19 (Utah 1986).

If, however, a landowner has knowledge of an uncommon, hidden peril or danger on the land that is not inherent in the use to which the land is put and that would not be reasonably discovered or avoided by a trespasser, the landowner's failure to warn or guard against such a danger could amount to willful, wanton, or malicious inaction. *See Featherstone v. Berg,* 28 Utah 2d 94, 95, 498 P.2d 660, 661 (1972) (stating that there is no duty to trespasser unless danger was hidden); *Prosser* § 58 (general principle that landowner has duty to warn of hidden dangers known to landowner but not to trespasser); Restatement (Second) of Torts § 335 cmt. f (1965) (landowner not entitled to assume that trespasser will discover conditions on land which are unusual or not readily observable by the exercise of due care).

A landowner's duty to trespassers under the Act is analogous to a landowner's duty to trespassers under the common law. *Golding I,* 793 P.2d at 901 (citing Jim Butler, *Outdoor Sports and Torts: An Analysis of Utah's Recreational Use Act,* 1988 Utah L.Rev. 47, 95). The general common law rule is that a " 'landowner owes no duty to a

---

1. One exception to the general rule is the attractive nuisance doctrine.

trespasser, except to refrain from causing wilful and wanton injury to him or her.'" *Pratt*, 813 P.2d at 1172 (quoting *Weber*, 725 P.2d at 1366; *Featherstone*, 498 P.2d at 661). This rule is based on the principle that a landowner need not protect trespassers in their wrongful use of his property; they must take the land as they find it. *See Pratt*, 813 P.2d at 1172; *see also Prosser* § 58.

■ A landowner is, however, liable for "willful or wanton" conduct under the common law. *Weber*, 725 P.2d at 1365. But a failure to warn or guard against dangerous conditions on the land that are common, obvious, or inherent in the nature of the land or in the use to which the land is put, such as a canal of orthodox construction, does not constitute willful or wanton conduct. *See Pratt*, 813 P.2d at 1173; *Featherstone*, 498 P.2d at 661; *cf. Loveland v. Orem City Corp.*, 746 P.2d 763, 772–73 (Utah 1987) (discussing public policy reasons for not imposing liability upon landowners for dangers associated with canals).

■ Thus, under the Act, a landowner's knowledge of a dangerous condition that is inherent in the use to which the land is put and is common, open, and obvious does not give rise to liability. It follows that Ashley had no greater duty of care to Randal under the Act than the duty that existed at common law to refrain from "willful or malicious failure to guard or warn against a dangerous condition." Utah Code Ann. § 57–14–6.

Similar statutes in other jurisdictions have been construed in a similar manner. In *Russell v. Tennessee Valley Authority*, 564 F.Supp. 1043 (N.D.Ala.1983), the plaintiff was injured when he slid down the spillway of a dam and dropped twenty feet into a creek bed. The court found that the danger of bodily injury was obvious, openly visible, and known to the plaintiff and inherent in orthodox dam construction. Applying a recreation statute with a standard of care identical to that stated in the Utah Act, the court held that the defendant violated no duty owed to the plaintiff.

In *Odar v. Chase Manhattan Bank*, 138 N.J.Super. 464, 351 A.2d 389 (App.Div.1976), the plaintiff drowned by falling through thin ice while rescuing his daughter. The defendant knew that the pond on its land was used for ice skating, but no signs were posted. The court found that the danger of thin ice on such ponds is inherent and of general knowledge and held, under a statute similar to the Utah Act with an identically worded standard of care, that the defendant's failure to guard or warn was not willful or malicious.

■ Golding argues that the district court erred in construing *Pratt* to hold that a canal owner is relieved of all liability if a condition is open, obvious, or inherent in the nature of a canal. In *Pratt*, we explained that a landowner may be liable for an injury caused by an uncommon, artificially produced, and inherently dangerous condition that attracts children. 813 P.2d at 1173; *see also Loveland*, 746 P.2d at 771; *Weber*, 725 P.2d at 1366; *Brown v. Salt Lake City*, 33 Utah 222, 238–40, 93 P. 570, 576 (1908). The attractive nuisance doctrine applies when conditions on the land are inherently dangerous and there is a likelihood that a child would not appreciate the danger. *Prosser* § 59.

■ Notwithstanding the attractive nuisance doctrine, a long line of cases have held that hazards that are common and inherent in the very existence of canals do not give rise to liability for public policy reasons. *E.g., Pratt*, 813 P.2d at 1172 n. 3; *Loveland*, 746 P.2d at 772–73; *see Trujillo v. Brighton–North Point Irr. Co.*, 746 P.2d 780, 782–83 (Utah 1987); *Weber*, 725 P.2d at 1366. We have, however, stated that a canal owner may be liable for injury resulting from special risks or dangers such as hidden traps or perils that are uncommon and not inherent in the nature of canals. *Pratt*, 813 P.2d at 1173. Nevertheless, the hazards in *Pratt* were open, obvious, and common to the nature and operation of canals, and accordingly, the Court held that the canal owner was not liable.[2]

2. The district court correctly ruled that Ashley could not be subject to liability under a theory based upon simple negligence under the attractive nuisance doctrine. That doctrine imposes on landowners a duty to take reasonable care with respect to attractive nuisances that exist on

Relying on "*Pratt* and other similar cases," the district court stated "that the policy of this state should be that owners of canals are not liable for dangers which are open and obvious, which are inherent in the very nature of canals." While the common law principles stated in *Pratt* do not control this case, the persuasive policy reasons supporting that rule are equally applicable under the Act.

It follows that Ashley is subject only to liability based on willful or malicious conduct, or for willful or malicious failure to guard or warn. As explained above, mere knowledge of dangers that are open, obvious, and inherent in the very existence of canals does not give rise to liability for willful and wanton failure to guard or warn. Golding was required to show something more than the existence of the dangerous condition to establish Ashley's liability for willful, wanton, or malicious conduct or inaction, and Golding was not able to do that.

▮ ▪Golding does argue that there were three hidden perils: (1) a large accumulation of debris at the bottom of the spillway, (2) a large depression at the bottom of the spillway, and (3) a "hydraulic jump" that created turbulence. It may be that these hazards were not visible on the surface, but to the extent they create a hazard, they are common in the operation of canals. It is those kinds of hazards and the dangers they create that those who use canals for swimming must be charged with knowing. Furthermore, there is no evidence that Ashley had knowledge of these conditions at the place in question. Without such knowledge, Ashley could not have acted willfully or maliciously in not warning.

Golding's second argument is that the district court erred when it ruled that the danger in the canal was "open, obvious and not hidden." His argument is significant because, as noted above, a danger known to the landowner but hidden from others may give rise to a duty. *See* Utah Code Ann. § 57–14–6; *Pratt*, 813 P.2d at 1173; *Trujillo*, 746

P.2d at 782. The plaintiff suggests that the depth of the pool below the spillway, the presence of debris at the bottom, and the forceful undertow of the turbulence were all "hidden" dangers which Randal could not see and had no knowledge of when he entered the canal.

Whether Randal was aware of these particulars does not alter the correctness of the district court's ruling. Such hazards are typical of canal spillways throughout the state and should be " 'understood and appreciated by any child of an age to be allowed at large.' " *Weber*, 725 P.2d at 1366 n. 19 (emphasis omitted) (quoting Restatement (Second) of Torts § 339 cmt. j); *see Pratt*, 813 P.2d at 1173 n. 5.

The cases Golding cites to support the proposition that the hazards in this case were hidden dangers are inapposite. In each case, the danger was found to be hidden because the condition on the surface appeared to be safe, giving the injured children no warning of the unexpected danger. *See, e.g., Menneti v. Evans Constr. Co.*, 259 F.2d 367 (3d Cir. 1958) (muddy water in ditch made depth deceptive to children accustomed to playing in shallow water which normally existed in tract); *Coeur d'Alene Lumber Co. v. Thompson*, 215 F. 8 (9th Cir.1914) (boys wading in pool fell into well hidden below surface of water by layer of floating sawdust); *Cicero State Bank v. Dolese & Shepard Co.*, 298 Ill.App. 290, 18 N.E.2d 574 (1939) (girl drowned after stepping on thick scum covering waterhole that appeared to be solid pathway); *Stadtherr v. City of Sauk Center*, 180 Minn. 496, 231 N.W. 210 (1930) (boy drowned after stepping in water covered with rubbish that appeared safe for walking); *Cooper v. City of Reading*, 392 Pa. 452, 140 A.2d 792 (1958) (boys drowned when they fell through ice on pool that was comparatively shallow at edges and that gave no indication of sixteen-foot-deep hole in its center).

The nature of the dangers, if not the precise particulars of the dangers below the

---

their land. However, the Act limits the duty of landowners to persons using the land for recreational purposes, "regardless of age, maturity, or experience." Utah Code Ann. § 57–14–2(5). Thus, although at common law a negligence

standard would have applied with respect to a hidden danger or peril under the attractive nuisance doctrine, liability could be based only upon a breach of a duty to refrain from willful or malicious conduct under the Act.

spillway, were known to Randal. Because of that, Randal changed his plans and swam above the dam. It was precisely because Randal knew of the dangers that he jumped into the turbulence to help his friend. That he may not have known every particular about the pool does not mean that the danger was hidden. A person does not need to know the temperature of a flame to understand that it will burn. We hold that the district court did not err by ruling the danger was open, obvious, and not hidden.

 Golding relies on Randal's obvious and admirable valor to raise his third argument, that the district court should have held that the "rescue doctrine" applied. Golding first made his claim that Ashley was liable under the rescue doctrine in his second amended complaint. When Golding moved the court to allow him to amend his former complaint, Ashley opposed the motion. Thereafter, Golding failed to notify the clerk of the court to submit the matter for decision. The Utah Code of Judicial Administration Rule 4–501 controls the filing of motions and provides that after memoranda have been submitted supporting and opposing a motion, "either party may notify the Clerk to submit the matter to the court for decision.... If neither party files a notice, the motion will not be submitted for decision." Utah Code of Jud.Admin.R. 4–501(1)(d). Because no notice was ever filed, Golding's motion for leave to file a second amended complaint, with its new claim under the rescue doctrine, was never properly before the district court. On these facts, the district court did not err by not addressing the rescue doctrine.

Affirmed.

ZIMMERMAN, C.J., and HOWE, DURHAM and RUSSON, JJ., concur.