Lori WHIPPLE, individually and as guardian ad litem for Jennifer Whipple, Christopher Whipple, Jeff Whipple, and Kelsey Whipple, minors and heirs of John C. Whipple, deceased, Plaintiff and Appellant,

v.

AMERICAN FORK IRRIGATION CO., a Utah corporation, and John Does 1 through 10, Defendants and Appellees.

No. 940308.

Supreme Court of Utah.

Jan. 26, 1996.

Fred D. Howard, Jackson Howard, Phillip E. Lowry, Provo, for plaintiff and appellant.

Thomas J. Scribner, Donald E. McCandless, Provo, for defendants and appellees.

HOWE, Justice:

Plaintiff Lori Whipple appeals from the district court's dismissal of her wrongful death action against defendant American Fork Irrigation Company. The dismissal was made under rule 12(b)(6) of the Utah Rules of Civil Procedure.

■ In determining whether a trial court properly dismissed an action under rule 12(b)(6), we assume that the factual allegations in the complaint are true and we draw all reasonable inferences in the light most favorable to the plaintiff. *Colman v. Utah State Land Bd.*, 795 P.2d 622, 624 (Utah 1990). In her complaint, Whipple alleged that her husband, John C. Whipple, drowned in defendant's irrigation ditch while attempting to save the life of a child who was a guest at their child's birthday party. She further alleged:

11. The irrigation ditch in which Mr. Whipple drowned was designed so as to create and facilitate swift currents and traps for debris which combined to prevent Mr. Whipple and the child he was rescuing from escaping the ditch.

12. The ditch in which Mr. Whipple drowned was defective when designed and constructed, and such defect rendered the device unreasonably dangerous.

13. Specifically, plaintiffs believe that the design of the irrigation ditch promoted swift currents, slick sides, and traps for debris. Plaintiffs further believe that because of inferior design and construction, and inadequate maintenance and policing, the debris became entrapped beneath a bridge causing an aquatic trap from which the decedent was unable to escape.

Whipple brought this wrongful death action on behalf of herself and her four minor children, claiming damages for the "excruciating pain and distress" suffered by her husband before his death and for the loss of his financial support, companionship, care, and affection. Defendant moved to dismiss for failure to state a claim under rule 12(b)(6), arguing that under cases such as *Loveland v. Orem City Corp.*, 746 P.2d 763 (Utah 1987), and *Weber v. Springville*, 725 P.2d 1360 (Utah 1986), canal owners are not generally liable for deaths or injuries occurring in their canals. The trial court granted its motion, and Whipple appeals.

■■■ Because a rule 12(b)(6) dismissal is a conclusion of law, we review for correctness, granting no deference to the trial court's decision. *St. Benedict's Dev. Co. v. St. Benedict's Hosp.*, 811 P.2d 194, 196 (Utah 1991). In reviewing the dismissal, we must keep in mind that the purpose of a rule 12(b)(6) motion is to challenge the formal sufficiency of the claim for relief, not to establish the facts or resolve the merits of a case. 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990). We also note that a dismissal is justified only when the allegations of the complaint clearly demonstrate that the plaintiff does not have a claim. *See* Utah R.Civ.P. 8(a) (stating that the only requirements of a complaint are that it contain a "short and plain statement ... showing that the pleader is entitled to relief" and "a demand for judgment for the relief").

■■■ To determine the sufficiency of Whipple's complaint, we first examine the applicable law. The basis of a wrongful death action is negligence. *See Kelson v. Salt Lake County*, 784 P.2d 1152, 1154–55 (Utah 1989). To successfully plead negligence, a claimant must allege that the defendant breached a duty that he owed to the claimant or, in this case, to the claimant's decedent. *Weber*, 725 P.2d at 1363. This court has often recognized that the duty owed by a possessor of land to another person depends on whether that person is an invitee, a licensee, or a trespasser. *Pratt v. Mitchell Hollow Irr. Co.*, 813 P.2d 1169, 1172 (Utah 1991).

■■■ Both parties agree that Whipple's decedent was a trespasser in defendant's ditch because he entered it "without a privilege to do so created by the possessor's consent or otherwise." Restatement (Second) of Torts § 329 (1965). In a number of our cases, we have stated that the only duty a possessor of land owes to a trespasser is to not wilfully or wantonly injure him. *Golding v. Ashley Cent. Irr. Co.*, 902 P.2d 142, 145–46 (Utah 1995); *Pratt*, 813 P.2d at 1172; *Weber*, 725 P.2d at 1366; *Loveland*, 746 P.2d at 765; *Featherstone v. Berg*, 28 Utah 2d 94, 95, 498 P.2d 660, 661 (1972). Upon closer examination, however, we believe the Restatement (Second) of Torts § 333 (1965) more accurately states the duty owed:

> Except as stated in §§ 334–339, a possessor of land is not liable to trespassers for physical harm caused by his failure to exercise reasonable care
>
> > (a) to put the land in a condition reasonably safe for their reception, or
> >
> > (b) to carry on his activities so as not to endanger them.

The exceptions stated in sections 334 to 339 deal generally with activities and artificial conditions highly dangerous to constant trespassers on a limited area or to known trespassers, controllable forces dangerous to known trespassers, and artificial conditions highly dangerous to trespassing children. Section 333 of the Restatement represents the rule adhered to by most courts. W. Page Keeton et al., *Prosser & Keeton on Torts* § 58, at 393 (5th ed. 1984).

██ The exception in section 339, known as the attractive nuisance doctrine, developed about a century ago in a series of cases called the turntable cases. *See Brown v. Salt Lake City*, 33 Utah 222, 237, 93 P. 570, 574 (1908). Under the attractive nuisance doctrine, "[i]f a trespassing child's injuries are caused by a property owner's failure to exercise reasonable care to safeguard children from a condition subject to the doctrine, then the child may recover." *Weber*, 725 P.2d at 1365; *see also Golding*, 902 P.2d at 146. Although this court usually examines the applicability of the attractive nuisance doctrine on a case-by-case basis,[1] we have held as a matter of law that canal owners and possessors are not generally subject to liability under this doctrine. *Loveland*, 746 P.2d at 772; *Brinkerhoff v. Salt Lake City*, 13 Utah 2d 214, 215, 371 P.2d 211, 212 (1962); *Charvoz v. Salt Lake City*, 42 Utah 455, 468–69, 131 P. 901, 906–07 (1913). However, we have also contemplated that an exception to this rule may arise when "some special risk is present on the owner's or possessor's property that is in the nature of a hidden trap or danger." *Pratt*, 813 P.2d at 1172–73.

This court has only recently had an opportunity to consider what might constitute a "hidden trap." *Golding*, 902 P.2d at 147. In *Golding*, we examined hazards typical of canal spillways in affirming summary judgment for an irrigation company under the Utah Limitation of Landowner Liability Act. We cited cases where the danger was found to be hidden because the condition on the surface of the water appeared to be safe, giving the injured child no warning of the true depth of the water or the danger below the surface. *Id.* However, the issue was not directly before us in *Golding* because the drowning victim clearly knew of the dangers of the spillway. *See id.* Other than *Golding*, there has been very little Utah case law on what

might constitute a "hidden trap." In *Trujillo v. Brighton–North Point Irrigation Co.*, 746 P.2d 780 (Utah 1987), we noted only that an owner might be liable "for harms resulting from dangers that are not inherent in the very existence of canals and ditches." *Id.* at 783 n. 4; *see also Weber*, 725 P.2d at 1366. In *Pratt*, 813 P.2d at 1173, we stated only that the "attractive nuisance doctrine or some analogue is applicable where there are hidden dangers or traps not ordinarily present in a body of water." We held that conditions which are common in canals and ditches, such as diversion boxes and culverts, do not give rise to the owner's liability. *Id.*

██ Having outlined the applicable law, we must determine whether the trial court properly dismissed Whipple's complaint. Defendant asserts that cases from other jurisdictions hold that Whipple's claim cannot survive a rule 12(b)(6) motion unless she alleged (1) that the decedent was a child, (2) that sufficient facts existed to indicate the presence of a "hidden trap," and (3) that the "hidden or deceptive condition caused the child to be placed in danger." Although defendant concedes that the hidden trap exception may apply to a child's rescuer,[2] such as Whipple's decedent, it asserts that the complaint was insufficient because the term "hidden trap" did not appear in the complaint and Whipple failed to allege that the hidden condition caused the decedent to be placed in danger. Whipple counters that requiring these allegations would be reminiscent of the old code pleading requirements and undermine the liberal standard of pleading underlying rule 12(b)(6).

██ With regard to defendant's assertion that Whipple failed to use the term "hidden trap" in her complaint, we find that the complaint is sufficient. Whipple used the term "aquatic trap" to describe the condition

---

1. In deciding whether the attractive nuisance doctrine applies, we usually examine the condition in question to determine whether it is one which the possessor may guard against without serious inconvenience or expense and whether it is uncommon, artificially produced, attractive to children of immature judgment, and inherently dangerous. *Brown v. Salt Lake City*, 33 Utah 222, 240, 93 P. 570, 576 (1908).

2. Defendant does not challenge the trial court's ruling that "[t]he attractive nuisance doctrine does not usually apply to adults but 'may be successfully invoked by an adult seeking damages for his or her own injury if the injury was suffered in an attempt to rescue a child from danger created by the defendant's negligence'" (quoting 62 Am.Jur.2d *Premises Liability* § 288 (1990)).

of the ditch, and this description could reasonably be construed to refer to a hidden trap. The trial court did not encounter difficulty in drawing this meaning from the term, and neither do we. Defendant further argues, however, that Whipple's allegations in her complaint of "swift currents, slick sides, and traps for debris" are inadequate to demonstrate that the canal contained a hidden trap. We cannot accept this argument because extensive factual allegations are not necessary in a complaint.[3] Requiring them would violate the basic concept that a complaint should not be dismissed under rule 12(b) unless "it is clear that plaintiff is not entitled to relief under any facts that could be proved." *Bailey v. Utah State Bar*, 846 P.2d 1278, 1279–80 (Utah 1993). In addition, until the hidden trap concept has been further defined in our case law, such cases are more appropriately evaluated in light of all the facts developed through discovery, not just those alleged in the complaint. *See* 5A Charles A. Wright, Arthur A. Miller *Federal Practice and Procedure* § 1357.

With regard to defendant's assertion that Whipple failed to properly allege that the "hidden or deceptive condition caused the child to be placed in danger," we find again that the complaint is sufficient. Defendant argues that the distinguishing element of the "hidden trap" doctrine is that it specifically deals with conditions which lured the child into danger or conditions which were deceptive so that the child did not recognize the danger, as opposed to conditions which ultimately caused injury or death. It is true that many cases have required a claimant to prove that hidden conditions caused the decedent to be placed in peril. *See, e.g., Menneti v. Evans Constr. Co.*, 259 F.2d 367, 371 (3d Cir.1958) (allowing award of damages to estate of minor child who entered defendant's property to play and drowned in pool that was excessively muddy and appeared deceptively shallow); *Coeur d'Alene Lumber Co. v. Thompson*, 215 F. 8, 17 (9th Cir.1914) (affirming award of damages to plaintiff for death of his minor son who entered defendant's property to play and drowned in saw-

dust-covered pool which appeared shallow but had deep well in center); *Englund v. Englund*, 246 Ill.App.3d 468, 476, 186 Ill.Dec. 57, 63, 615 N.E.2d 861, 867 (denying liability where child's death in swimming pool was not caused by either water hazard or alleged negligence of defendant), *appeal denied*, 153 Ill.2d 558, 191 Ill.Dec. 618, 624 N.E.2d 806 (1993); *Stadtherr v. City of Sauk Center*, 180 Minn. 496, 501, 231 N.W. 210, 212 (1930) (affirming award of damages to estate of five-year-old child who drowned after entering defendant's property to go fishing and fell through pile of rubbish that had accumulated over river); *Cooper v. City of Reading*, 392 Pa. 452, 466–67, 140 A.2d 792, 797–98 (1958) (allowing judgment in favor of estates of two young brothers who entered defendant's property to ice-skate but who drowned when they fell through ice into deceptively deep pool). However, because this court has not yet defined the causation required for recovery under the hidden trap exception, we cannot agree with defendant that Whipple was compelled to allege that a hidden condition caused her decedent to be placed in peril as opposed to having ultimately caused the decedent's death.

In her complaint, Whipple alleged that "the injuries and death occurred because of a defective irrigation ditch, and its associated channeling devices, bridges, currents, and trappings." She also stated, "As a further direct and proximate result of the defective and unreasonably dangerous condition of the irrigation ditch, plaintiffs have suffered damages for loss of financial support, ... comfort, society, advice, care, companionship, affection and happiness of association of the decedent." We conclude that at this early stage in the development of the hidden trap exception in this state, these allegations of causation are sufficient to survive a rule 12(b)(6) motion.

We reverse the trial court's dismissal of the complaint and remand the case for further proceedings.

---

**3.** We note that when a complaint states a claim in general language but the factual allegations are so vague and ambiguous that the defendant cannot draft an answer, the proper course of action is to move for a more definite statement under rule 12(e), not to move for dismissal. *Liquor Control Comm'n v. Athas*, 121 Utah 457, 460, 243 P.2d 441, 443 (1952).

ZIMMERMAN, C.J., and DURHAM and RUSSON, JJ., concur.

STEWART, Associate C.J., concurs in the result.